FILED _____ ENTERED
LODGED _____ RECEIVED

JUL 01 2020

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

FRANKLYN K. JONES pro-se,

**Plaintiff**

vs.

Case No. _____

TWITTER, INC

**JURY DEMAND**

**Defendant**

---

## COMPLAINT FOR DAMAGES AND OTHER RELIEF WITH JURY DEMAND

Comes now, Plaintiff Franklyn Jones pro-se filing a Complaint with the Court on this ⧸ day

of July, 2020, complaining of the following business: Twitter Inc. Upon discovery, Plaintiff

reserves the right to name additional Defendants or perfect the names of those identified as

potential Defendants.

### I. DISCOVERY, ADMISSIONS, INTERROGATORIES AND DEPOSITIONS

1) Plaintiff intends to conduct Discovery, Admissions, Interrogatories and Depositions.

### II. BACKGROUND and PARTIES

#### Plaintiff

2) Plaintiff is Franklyn Jones; a Citizen of the United States of America, a resident of the

City of Baltimore. He is the primary injured complainant in regards to this matter and

appears pro-se. His account was known as "**aboxoffrogs**" noted with "@" directly

proceeding as this is symbol is the Defendant's nomenclature. In regards to this matter,

the Plaintiff would concur that Franklyn Jones and "aboxoffrogs" for the purposes of

Defendant(s), are the same person. Additionally, the two accounts established after the

unwarranted deplatforming/suspension belong to the Plaintiff ("anotherboxoffrogs" and "General Discomfort" respectively). The Plaintiff is a resident of Maryland, and specifically is a non-employed disabled individual still presently residing at: 2715 Inglewood Ave., Baltimore, MD 21234.

**Defendant**

3) TWITTER, INC. is a social media platform provider using various communication networks and consumer communication devices which are regulated by United States Code of Laws, tieing computing devices through their exclusive software applications described as a "platform" and the Defendant's data center(s). The Maryland Department of Assessments and Taxation ASSERTS that Twitter, Inc. "**does not**" do business in Maryland and therefore is "**not required**" to register as a business entity. Therefore Twitter maintains no Resident Agent in the state of Maryland according to this Executive Agency in information provided directly to the Plaintiff. This has the result of making Process Service exceedingly difficult despite Twitter itself being used as a medium for International Process Service. Twitter's Terms of Service Expressly State (https://twitter.com/en/tos#update) to contact them at their headquarters address at:

TWITTER, INC.

1355 MARKET STREET

SUITE 900

SAN FRANCISCO, CA 94103

This address will be used for the purposes of Service of Process unless the Court deems otherwise or an appearance is made by the Defendant's representative. Plaintiff requests the Court issue a summons in regard to this matter compelling the Defendant to file an answer to the allegations. Jack Dorsey is listed as "CEO" Chief Executive

Officer. This individual will be used as the responsive component until such time as other representatives appear. The Plaintiff has requested a summons from this Court.

4) Defendant TWITTER, INC. was the social media platform being used by the Plaintiff, Franklyn Jones. Twitter Inc, provided the social media platform for the express use of the Plaintiff beginning in 2012 and for an additional 8 years. The Plaintiff made over 17,000 "Tweets" with his ONE AND ONLY SOLE ACCOUNT.

5) Despite the Defendants severe negative manipulation of "Followers" (which are individuals who chose to subscribe to having your specific content appear for their consideration on their programming "feed") the Plaintiff maintained several thousand individuals/followers who "subscribed" to his content. These followers lived in all 50 States of the "Union" and many Countries throughout the world.

### III.  JURISDICTION & VENUE

6) Venue is proper in the United States Fourth Judicial District of Maryland as the Plaintiff resided in Maryland during the start of the presently continuing accrual of these causes of action, and still currently resides in Maryland.

7) Venue is proper as Plaintiff joined two or more claims or causes of action arising from the same transaction, occurrence, or series of transactions or occurrences as filed in this same matter by this Complaint, Affidavit and Exhibits **ALL** of which are incorporated herein by reference.

### IV. JURY TRIAL DEMAND

8) **Plaintiff demands a trial by jury**.

## V. FACTS

9) Plaintiff files numbered Exhibits in support of the Complaint which in themselves are facts. Plaintiff incorporates all of Plaintiff's Exhibits as if fully set out herein.

10) Plaintiff files an Affidavit in support of and in addition to outlining the facts. Plaintiff incorporates the Affidavit as if fully set out herein.

11) Plaintiff states the **Defendant has self-serving data retention policies** and draws conclusions on false premise which in itself is libelous defamation. The Defendant has tainted all accounts associated with it's "Platform" in this regard. Some taints are more tainted than the others, apparently. Defendant requests specific discovery in regards to this assertion.

## VI. CAUSES OF ACTION

## A. DEFAMATION BY WAY OF LIBEL.

12) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by reference.

13) Plaintiff is neither a public official nor a public figure for any purpose.

14) The statements made and published by Defendant were statements of fact that were false, both in their particular details and in the main point, essence, or gist in the context in which they were made.

15) The statements made and published by Defendant directly and/or indirectly referred to the Plaintiff.

16) The statements made and published by Defendants were libelous per se because they injured the Plaintiff's reputation and have exposed the Plaintiff to contempt, ridicule and financial injury.

17) The statements made and published by the Defendant were libelous per se because they impeach the Plaintiff's honesty, integrity, virtue and reputation.

18) The statements made and published by the Defendant were libelous per se and slanderous per se because they injured the Plaintiff in his office, profession and occupation.

19) The statements made and published by the Defendant were libelous per se and slanderous per se to the extent they falsely charged the Plaintiff with submitting false statements and publication in order to secure a false contractual benefit through constantly changing "Terms of Service" found here "https://twitter.com/en/tos"

20) In the alternative, The statements made and published by Defendants were libelous through innuendo and/or implication.

21) Defendants are strictly liable for the damages caused by the libel as demonstrated below and by the **Executive Order on Preventing Online Censorship** Issued on: May 28, 2020 the United States presents it's intention in defining the Defendant's obvious overly abused legal loophole as stated below.

22) Alternatively, the Defendant knew the defamatory statements and publications were false or were reckless with regard to whether the statements of fact were false.

**PLAINTIFF'S EVIDENCE**

23) The Defendant(s), by way of their emailed communication allege the following:

**Plaintiff's Exhibit 01**. The Defendant hand picks the one "Tweet" that shall end the Plaintiff's 8 year account with 17,000+ "Tweets". The Defendant was expressly aided by Trevor Noah and The Daily Show's Twitter accounts. Respectively found on the Defendant's "platform" by the following notations "@TheDailyShow" and "@Trevornoah". The rest of the Tweet contains a nine or ten word sentence in addition to the two account

names. In the email Twitter uses to suspend the account they also include part of an
internet address simply noted as "https://[...]"

24) For the decorum of the Court and the deep sensitivity that these PUBLIC PERSONS and
PUBLIC ENTITIES now represent, Plaintiff has chosen to ***blacken out*** the words the
Defendant has alleged the Plaintiff used in what is described by the Defendant(s) as
promoting "violence against, threaten, or harass other people **on the basis of race,
ethnicity, national origin, sexual orientation, gender, gender identity, religious
affiliation, age, disability, or serious disease**."

25) Our government places a **high priority** on the public being allowed to speak their minds
about elected officials as well as **other public figures**. People and Entities in the **public
eye get less protection from defamatory statements and face a higher burden
when attempting to win a defamation lawsuit.**

26) When a public person or entity is criticized in a false and injurious way for something that
relates to their behavior, they must prove all of the elements associated with normal
defamation, and must also show that the statement was made with "**actual malice**."

27) "**Actual malice**" was defined in a U.S. Supreme Court case decided in 1988, Hustler v.
Falwell. In that case, the court held that **certain statements that would otherwise be
defamatory were protected by the First Amendment of the United States
Constitution**.

28) The Plaintiff Reserves the right to to add additional Defendants to include but limited to
the alleged "victims" who are identified by the Defendant, Twitter Inc. as Trevor Noah, a
South African National allowed to "work" (hopefully legally) in the United States as the
current "Host" (public eye) of the Daily Show (**an American satirical news program on
the broadcast cable television network known as Comedy Central**) and a **Stand Up**

**Comedian** (public eye, because comedians get heckled. It's where the word originated). **Mr. Noah is known for calling Americans "stupid" in their perception of world events**, especially of South African "history". He states this in his stand-up comedy bits and in Columbia Broadcasting System's aired "story" on their CBS Sunday Morning News Show (a parent company of ViacomCBS) in a piece titled "**Look who's talking: Trevor Noah**". To say Mr. Trevor Noah has his very own public "bully pulpit" is an understatement. Just look who's talking. Plaintiff states this fact is more devastating than the 9 or 10 words (depending on if you count a contraction as 1 or 2 words) that **Plaintiff's Exhibit 01** masks for the "protection" of Mr. Noah and whom the Defendant removed without the permission of the Plaintiff from their contracted service.

29) This Plaintiff IS A NATIVE BORN AMERICAN CITIZEN. Plaintiff is offended by being called "stupid" directly, proximently with malice and forethought by Mr. Trevor Noah of South Africa in this Sunday, November 13th 2015 "news" piece and in other **NUMEROUS** "comedy" pieces before and since. For reference, this file is currently stored and posted by CBS Sunday Morning (a ViacomCBS parent company) on YouTube. Trevor Noah calling all American's **stupid** and as bonus; the only known photo (as far as the Plaintiff is aware) of Mr. Noah's "Swiss" father to be in existence in the Public Domain are in this "news" clip. **https://youtu.be/nIVFkkqRro8**

30) The Plaintiff Reserves the right to to add additional Defendants to include but not limited to the alleged "victims" who are identified by the Defendant, Twitter Inc. as "The Daily Show", which shall include everyone associated with maintaining and inputting for this entity which is distributed by the entity known as "ViacomCBS Domestic Media Networks". The Plaintiff reserves the right to add ViacomCBS as a Defendant. They are the parent company of CBS Sunday Morning.

7

31) The Defendant(s), by way of their emailed communication allege the following:

**Plaintiff's Exhibit 02** is directed at each and every separate account on the Defendant's "platform", establishing proof that the Plaintiff's suspension is direct and proximate to the individual known as Franklyn Jones and not just account specific. "...Your account has been suspended and will not be restored because it was found to be violating Twitter's Terms of Service, **specifically the Twitter Rules against hateful conduct**.

It is against our rules to promote violence against or directly attack or threaten other people **on the basis of race, ethnicity, national origin, sexual orientation, gender, gender identity, religious affiliation, age, disability, or disease**.

Additionally, if we determine that the primary purpose of an account is to incite harm towards others on the basis of these categories, that account may be suspended without prior warning..."

32) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a singular tweet with maybe 10 words and an associated picture, of which the Defendant fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime" perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful purpose and malice to deprive United States Citizens their Right to Free Speech as stated in the First Amendment to the Constitution of the United States of America. The matters stated in this Complaint and the Evidence supplied by the Defendant through this as to the CAUSE of THEIR ACTION support the fact that a South African National has more freedom of speech in America than a Natural Born American Citizen in his own country. This in any other country would have the Defendant labeled a terrorist organization.

33) Plaintiff is entitled to recover nominal damages, general damages, special damages, compensatory damages and/or exemplary/punitive damages.

## B. TORTUROUS INTERFERENCE WITH EXISTING CONTRACT

34) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by reference.

35) Plaintiff had a valid contract known as "the Terms of Service" in which the Plaintiff maintained his account for 8 years until it became a matter of untenable blatant censorship through use of various software algorithms which would artificially "boost" the social media (propaganda) of one individual over other individuals who may not share the "appropriate" views of the Defendant. The Defendant knew of the contract, as they produced it for the use on their exclusive Social Media **PLATFORM** and had knowledge of the facts and circumstances that would lead the Defendant to believe Plaintiff had a valid contract.

36) Defendants' tortious conduct willfully and intentionally interfered with the contract.

37) Defendants' tortious conduct directly and proximately caused Plaintiff injury.

38) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a singular tweet with maybe 10 words and an associated picture, of which the Defendant fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime" perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful purpose and malice to deprive United States Citizens their Right to Free Speech as stated in the First Amendment to the Constitution of the United States of America. The matters stated in this Complaint and the Evidence supplied by the Defendant through this as to the CAUSE of THEIR ACTION support the fact that a South African National has more freedom of speech in America than a Natural Born American Citizen in his own

country. This in any other country would have the Defendant labeled a terrorist organization.

39) Plaintiff is entitled to recover nominal damages, general damages, special damages, compensatory damages and/or exemplary/punitive damages.

## C. AIDING & ABETTING

40) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by reference.

41) Each potential separate Defendant or the Defendant alone, as an employee, contractor or other individual user of Twitter Inc.'s product in regards to this matter has committed the forgoing torts of libel, slander, and/or tortious interference with an existing contract. Each potential Defendant had knowledge that each potential co-Defendant's conduct constituted libel, slander, and/or tortious interference with an existing contract. Each potential Defendant intended to assist, and did actually assist and encourage each co-Defendant in committing the libel, slander, and or tortious interference with an existing contract. Each potential Defendants' assistance and encouragement was a substantial factor in causing libel, slander, and/or tortious interference with an existing contract.

42) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a singular tweet with maybe 10 words and an associated picture, of which the Defendant fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime" perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful purpose and malice to deprive United States Citizens their Right to Free Speech as stated in the First Amendment to the Constitution of the United States of America. The matters stated in this Complaint and the Evidence supplied by the Defendant through

this as to the CAUSE of THEIR ACTION support the fact that a South African National has more freedom of speech in America than a Natural Born American Citizen in his own country. This in any other country would have the Defendant labeled a terrorist organization.

43) Plaintiff is entitled to recover nominal damages, general damages, special damages, compensatory damages and/or exemplary/punitive damages.

## D. CONSPIRACY

44) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by reference.

45) Potential Defendants, or the Defendant alone acted together to accomplish the libel, slander, and/or tortious interference with an existing contract. Defendants had a meeting of the minds on the object or course of action and committed one or more unlawful, overt acts detailed herein.

46) Defendants are jointly and severally liable for the injuries the Plaintiff suffered as a direct and proximate result of Defendants' wrongful actions.

47) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a singular tweet with maybe 10 words and an associated picture, of which the Defendant fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime" perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful purpose and malice to deprive United States Citizens their Right to Free Speech as stated in the First Amendment to the Constitution of the United States of America. The matters stated in this Complaint and the Evidence supplied by the Defendant through this as to the CAUSE of THEIR ACTION support the fact that a South African National has more freedom of speech in America than a Natural Born American Citizen in his own

country. This in any other country would have the Defendant labeled a terrorist organization.

48) Plaintiff is entitled to recover nominal damages, general damages, special damages, compensatory damages and/or exemplary/punitive damages.

## E. RATIFICATION

49) All previous allegations, Memorandum, Plaintiff's Exhibits and Affidavit are incorporated herein by reference.

50) Each potential Defendant or the Defendant alone, ratified the libel, slander, and/or tortious interference with an existing contract committed by all other Defendants through approving such conduct after acquiring full knowledge of the same with intent of giving validity to the torturous conduct which includes but is not limited to manipulating the Plaintiff's account in a manner to cause unexplained loss of followers and the actual manipulation of positive reinforcing data to this Plaintiff and many other users of this Defendant's product. Production of Discovery and witness affidavit and testimony will validate this assertion as fact.

51) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a singular tweet with maybe 10 words and an associated picture, of which the Defendant fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime" perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful purpose and malice to deprive United States Citizens their Right to Free Speech as stated in the First Amendment to the Constitution of the United States of America. The matters stated in this Complaint and the Evidence supplied by the Defendant through this as to the CAUSE of THEIR ACTION support the fact that a South African National has more freedom of speech in America than a Natural Born American Citizen in his own

country. This in any other country would have the Defendant labeled a terrorist organization.

52) Plaintiff is entitled to recover nominal damages, general damages, special damages, compensatory damages and/or exemplary/punitive damages.

## F. RETRACTION

53) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by reference.

54) Plaintiff demands Defendants correct their statements and publications, and retract all the statements and publications of the Plaintiff. That the 17,000+ "Tweets" are now proprietary property of the Plaintiff since their UNAUTHORIZED removal from the "Public" Platform. Plaintiff has lost all custodianship of his account and his words are now wards of the Defendant. In that regard, the words of the Plaintiff are held under duress. The statements and publications were defamatory by: (1) injuring the Plaintiff's reputation and exposing Plaintiff to public contempt, ridicule, and financial injury; (2) by impeaching Plaintiff's honesty, integrity, virtue, and reputation; (3) by injuring the Plaintiff in his office, profession, and occupation; and (4) by falsely charging the Plaintiff with providing intentionally false information to gain contractual benefit.

55) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a singular tweet with maybe 10 words and an associated picture, of which the Defendant fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime" perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful purpose and malice to deprive United States Citizens their Right to Free Speech as stated in the First Amendment to the Constitution of the United States of America. The matters stated in this Complaint and the Evidence supplied by the Defendant through

this as to the CAUSE of THEIR ACTION support the fact that a South African National

has more freedom of speech in America than a Natural Born American Citizen in his own

country. This in any other country would have the Defendant labeled a terrorist

organization.

56) Plaintiff is entitled to recover nominal damages, general damages, special damages,

compensatory damages and/or exemplary/punitive damages.

## G. VIOLATION OF THE INTENT OF IMMUNITY FROM LIABILITY CREATED BY SECTION 230(c) OF THE COMMUNICATIONS DECENCY ACT (section 230(c)).  47 U.S.C. 230(c)

57) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by

reference.

58) The following paragraphs 59-63 are quotes from Executive Order on Preventing Online

Censorship INFRASTRUCTURE & TECHNOLOGY issued May 28, 2020.

59) "It is the policy of the United States that the scope of that immunity should be clarified:

the immunity should not extend beyond its text and purpose to provide protection for

those who purport to provide users a forum for free and open speech, but in reality use

their power over a vital means of communication to engage in deceptive or pretextual

actions stifling free and open debate by censoring certain viewpoints."

60) "The provision was... intended to further the express vision of the Congress that the

internet is a 'forum for a true diversity of political discourse.' 47 U.S.C. 230(a)(3).  The

limited protections provided by the statute should be construed with these purposes in

mind."

61) "It is the policy of the United States to ensure that, to the maximum extent permissible

under the law, this provision is not distorted to provide liability protection for online

platforms that — far from acting in "good faith" to remove objectionable content —

instead engage in deceptive or pretextual actions (**often contrary to their stated terms of service**) to stifle viewpoints with which they disagree. Section 230 was not intended to allow a handful of companies to grow into titans controlling vital avenues for our national discourse under the guise of promoting open forums for debate, and then to provide those behemoths blanket immunity when they use their power to censor content and silence viewpoints that they dislike."

62) " When an interactive computer service provider [**the Defendant**] removes or restricts access to content and its actions do not meet the criteria of subparagraph (c)(2)(A), it **is engaged in editorial conduct**. It is the policy of the United States that such a provider should properly lose the limited liability shield of subparagraph (c)(2)(A) and be exposed to liability like any traditional editor and publisher that is not an online provider." **THIS PLAINTIFF FURTHER ASSERTS THAT THIS SHIELD NOW BE REMOVED FOR ALL PARTIES AT TWITTER INC. EFFECTIVE IMMEDIATELY**. Twitter Inc., has no method to address and rectify the defamation and damages that has and continues to occur as a result of their continuing and ongoing manipulation of their "service".

63) "In addition, within 60 days of the date of this order (Executive Order on Preventing Online Censorship INFRASTRUCTURE & TECHNOLOGY Issued on: **May 28, 2020**), the Secretary of Commerce, in consultation with the Attorney General, and acting through the National Telecommunications and Information Administration, shall file a petition for rulemaking with the Federal Communications Commission requesting that the FCC expeditiously propose regulations to clarify:

(i) the interaction between subparagraphs (c)(1) and (c)(2) of section 230, in particular to clarify and determine the circumstances under which a provider of an interactive computer service [the Defendant] that restricts access to content in a manner not

specifically protected by subparagraph (c)(2)(A) may also not be able to claim protection under subparagraph (c)(1), which merely states that a provider shall not be treated as a publisher or speaker for making third-party content available and does not address the provider's responsibility for its own editorial decisions;

(ii)  the conditions under which an action restricting access to or availability of material is not "taken in good faith" within the meaning of subparagraph (c)(2)(A) of section 230, particularly whether actions can be "taken in good faith" if they are:

(A)  deceptive, pretextual, or inconsistent with a provider's terms of service; or

(B)  taken after failing to provide adequate notice, reasoned explanation, or a meaningful opportunity to be heard; and

(iii)  any other proposed regulations that the NTIA concludes may be appropriate to advance the policy described in subsection (a) of this section.

Sec. 3.  **Protecting Federal Taxpayer Dollars from Financing Online Platforms That Restrict Free Speech**.  (a)  The head of each executive department and agency (agency) shall review its agency's Federal spending on advertising and marketing paid to online platforms.  Such review shall include the amount of money spent, the online platforms that receive Federal dollars, and the statutory authorities available to restrict their receipt of advertising dollars.

(b)  Within 30 days of the date of this order, the head of each agency shall report its findings to the Director of the Office of Management and Budget.

(c)  The Department of Justice shall review the viewpoint-based speech restrictions imposed by each online platform identified in the report described in subsection (b) of this section and assess whether any online platforms are problematic vehicles for

16

government speech due to viewpoint discrimination, deception to consumers, or other

bad practices.

64) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a

singular tweet with maybe 10 words and an associated picture, of which the Defendant

fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime"

perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful

purpose and malice to deprive United States Citizens their Right to Free Speech as

stated in the First Amendment to the Constitution of the United States of America. The

matters stated in this Complaint and the Evidence supplied by the Defendant through

this as to the CAUSE of THEIR ACTION support the fact that a South African National

has more freedom of speech in America than a Natural Born American Citizen in his own

country. This in any other country would have the Defendant labeled a terrorist

organization.

65) Plaintiff is entitled to recover nominal damages, general damages, special damages,

compensatory damages and/or exemplary/punitive damages.

**H. Violations of the The Electronic Communications Privacy Act of 1986 (ECPA).**

66)  All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by

reference.

67) The Electronic Communications Privacy Act of 1986 (ECPA) was enacted by the United

States Congress to extend restrictions on government wiretaps of telephone calls to

include transmissions of electronic data by computer. 18 U.S. Code § 2510

68)  New provisions prohibiting access to stored electronic communications, i.e., the Stored

Communications Act were added (SCA, 18 U.S.C. § 2701)

69) 18 U.S. Code § 2511. **Interception and disclosure of wire, oral, or electronic**

**communications prohibited**.

70) Except as otherwise specifically provided in this chapter **any person who**—

(a) **intentionally intercepts**, endeavors to intercept, or procures any other person to

intercept or endeavor to intercept, any wire, oral, or **electronic communication**;

(b) **intentionally uses**, endeavors to use, or procures any other person to use or

endeavor to use any electronic, mechanical, or other device to intercept any oral

communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or

other like connection used in wire communication; or

(ii) such device transmits communications by radio, or interferes with the transmission

of such communication; or

(iii) such person knows, or has reason to know, that such device or any component

thereof has been sent through the mail or transported in interstate or foreign commerce;

or

(iv) such use or endeavor to use (A) takes place on the premises of any business or

other commercial establishment the operations of which affect interstate or foreign

commerce; or (B) obtains or is for the purpose of obtaining information relating to the

operations of any business or other commercial establishment the operations of which

affect interstate or foreign commerce; or (v) such person acts in the District of Columbia,

the Commonwealth of Puerto Rico, or any territory or possession of the United States;

(c) **intentionally discloses, or endeavors to disclose, to any other person the**

**contents of any wire, oral, or electronic communication, knowing or having reason**

to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

(e) (i) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, intercepted by means authorized by sections 2511(2)(a)(ii), 2511(2)(b)–(c), 2511(2)(e), 2516, and 2518 of this chapter, (ii) knowing or having reason to know that the information was obtained through the interception of such a communication in connection with a criminal investigation, (iii) having obtained or received the information in connection with a criminal investigation, and (iv) with intent to improperly obstruct, impede, or interfere with a duly authorized criminal investigation, shall be punished as provided in subsection (4) **or shall be subject to suit as provided in subsection (5).**

(3)(a) Except as provided in paragraph (b) of this subsection, **a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient.**

(ii) In an action under this subsection—

(A) if the violation of this chapter is a first offense for the person under paragraph (a) of subsection (4) and such person **has not been found liable in a civil action under**

**section 2520 of this title**, the Federal Government shall be entitled to appropriate injunctive relief; and

(B) if the violation of this chapter is a second or subsequent offense under paragraph (a) of subsection (4) or such person has been found liable in any prior civil action under section 2520, the person shall be subject to a mandatory $500 civil fine.

(b)The court may use any means within its authority to enforce an injunction issued under paragraph (ii)(A), and shall impose a civil fine of not less than $500 for each violation of such an injunction.

71) The Defendant is in no way allowed to conduct a fishing expedition after the fact on the Plaintiff's **NOW PROTECTED** Social Media under the duress of the Defendant's complete control. At the point the Defendant removed all Plaintiff's communication, they became private, and as such, it is a violation to conduct an investigation for the express purpose of finding someone has "hateful conduct" or other loosely defined "conduct" which is not by itself illegal. The Defendant(s) have shard NO DETAILS in what this term means and WILL NOT HAVE THE PRIVILEGE of using 8 years and over 17,000 of the Plaintiffs own "Tweets", out of context, to suddenly come up with whatever emotional based response the Defendant wishes to PROJECT upon the Plaintiff. The Plaintiff does not allow the Defendant to speak for him. Plaintiff appears pro-se. The Defendant clearly failed to mention the number of individuals the Plaintiff prayed for and wished health, happiness, love and peace. The Defendant acted before providing **Plaintiff's Exhibit 01**. The Libel Defamation remains, however if the Defendant(s) and the actual aggrieved persons the Defendant is acting maliciously to represent on their behalf, **have no right to any of the Plaintiff's now removed and stored communication under the illegal wardship of the Defendant**. The Defendant has made the Plaintiff's social media

20

private by their OWN misdeed, they will not right this wrong by conducting a further

fishing expedition against the now damaged Plaintiff LOOKING for what they perceive as

hateful content. It is now PRIVATE MEDIA and NOT SOCIAL at all. The Defendant(s)

shall explain the need to monitor this specific Plaintiff.

72) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a

singular tweet with maybe 10 words and an associated picture, of which the Defendant

fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime"

perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful

purpose and malice to deprive United States Citizens their Right to Free Speech as

stated in the First Amendment to the Constitution of the United States of America. The

matters stated in this Complaint and the Evidence supplied by the Defendant through

this as to the CAUSE of THEIR ACTION support the fact that a South African National

has more freedom of speech in America than a Natural Born American Citizen in his own

country. This in any other country would have the Defendant labeled a terrorist

organization.

73) Plaintiff is entitled to recover nominal damages, general damages, special damages,

compensatory damages and/or exemplary/punitive damages.

## I.   VIOLATION OF TITLE II/III of the CIVIL RIGHTS ACT OF 1964

74) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by

reference.

75) Title II prohibits discrimination in theaters, restaurants, motels, hotels, **and any other

type of public accommodation that engages interstate commerce**. An exemption is

made for "private" clubs. Plaintiff asserts the Defendant by way of providing a public

"platform"/public forum, is a **public accommodation that engages interstate commerce**.

76) Title III prohibits municipal or state governments from denying anyone access to public facilities on the basis of color, race, national origin or religion. Plaintiff asserts the Defendant by way of providing a public "platform", public forum, is a **type of public facility that engages interstate commerce**.

77) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a singular tweet with maybe 10 words and an associated picture, of which the Defendant fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime" perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful purpose and malice to deprive United States Citizens their Right to Free Speech as stated in the First Amendment to the Constitution of the United States of America. The matters stated in this Complaint and the Evidence supplied by the Defendant through this as to the CAUSE of THEIR ACTION support the fact that a South African National has more freedom of speech in America than a Natural Born American Citizen in his own country. This in any other country would have the Defendant labeled a terrorist organization.

78) Plaintiff is entitled to recover nominal damages, general damages, special damages, compensatory damages and/or exemplary/punitive damages.

## J. VIOLATION OF TITLE VI of the CIVIL RIGHTS ACT of 1964

79) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by reference.

80) Title VI Prohibits discrimination on the basis of national origin, color or race, color in activities or programs which receive federal funding. It is usually applied to publicly

funded schools, but can also be applied to law enforcement. Defendant receives protection from the blanket "platform" designation which is a violation of the intent of immunity from liability created by SECTION 230(c) of the COMMUNICATIONS DECENCY ACT (section 230(c)).  47 U.S.C. 230(c).

81) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a singular tweet with maybe 10 words and an associated picture, of which the Defendant fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime" perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful purpose and malice to deprive United States Citizens their Right to Free Speech as stated in the First Amendment to the Constitution of the United States of America. The matters stated in this Complaint and the Evidence supplied by the Defendant through this as to the CAUSE of THEIR ACTION support the fact that a South African National has more freedom of speech in America than a Natural Born American Citizen in his own country. This in any other country would have the Defendant labeled a terrorist organization.

82) Plaintiff is entitled to recover nominal damages, general damages, special damages, compensatory damages and/or exemplary/punitive damages.

## K. VIOLATION OF THE FEDERAL TRADE COMMISSION ACT/ROBINSON-PATMAN ACT.

83) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by reference.

84) Price related discrimination against consumers could be grounds for FTC enforcement if: **Consumers are injured by the practice. Public policy is violated. It is unscrupulous or unethical.**

85) Plaintiff asserts as a consumer of Defendant's product and by and through a contract
known as "Terms of Service" all the Defendant's **Consumers are injured by the
practice, public policy is violated, and it is unscrupulous or unethical.**

86) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a
singular tweet with maybe 10 words and an associated picture, of which the Defendant
fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime"
perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful
purpose and malice to deprive United States Citizens their Right to Free Speech as
stated in the First Amendment to the Constitution of the United States of America. The
matters stated in this Complaint and the Evidence supplied by the Defendant through
this as to the CAUSE of THEIR ACTION support the fact that a South African National
has more freedom of speech in America than a Natural Born American Citizen in his own
country. This in any other country would have the Defendant labeled a terrorist
organization.

87) Plaintiff is entitled to recover nominal damages, general damages, special damages,
compensatory damages and/or exemplary/punitive damages.

**L. VIOLATION OF 18 USC 241: CONSPIRACY AGAINST RIGHTS.**

88) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by
reference.

89) **If two or more persons** conspire to injure, oppress, threaten, or intimidate **any person**
in any State, Territory, Commonwealth, Possession, or District in the free exercise or
enjoyment of any right or privilege secured to him by the Constitution or laws of the
United States, or because of his having so exercised the same; or

90) **If two or more persons go in disguise** on the highway, or on the premises of **another**, by way of access through regulated communication networks to SPECIFIC devices located within the Plaintiff's home, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured-

91) **They shall be fined under this title or imprisoned not more than ten years, or both;** and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

92) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a singular tweet with maybe 10 words and an associated picture, of which the Defendant fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime" perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful purpose and malice to deprive United States Citizens their Right to Free Speech as stated in the First Amendment to the Constitution of the United States of America. The matters stated in this Complaint and the Evidence supplied by the Defendant through this as to the CAUSE of THEIR ACTION support the fact that a South African National has more freedom of speech in America than a Natural Born American Citizen in his own country. This in any other country would have the Defendant labeled a terrorist organization.

93) Plaintiff is entitled to recover nominal damages, general damages, special damages, compensatory damages and/or exemplary/punitive damages.

**M. VIOLATION OF 18 USC 242: DEPRIVATION OF RIGHTS UNDER COLOR OF LAW.**

94) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by reference.

95) **Whoever**, under color of any law, statute, ordinance, regulation, or custom, **willfully subjects any person in any State**, Territory, Commonwealth, Possession, or District **to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States**, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

96) Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a singular tweet with maybe 10 words and an associated picture, of which the Defendant fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime" perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful purpose and malice to deprive United States Citizens their Right to Free Speech as stated in the First Amendment to the Constitution of the United States of America. The matters stated in this Complaint and the Evidence supplied by the Defendant through this as to the CAUSE of THEIR ACTION support the fact that a South African National

has more freedom of speech in America than a Natural Born American Citizen in his own country. This in any other country would have the Defendant labeled a terrorist organization.

97) Plaintiff is entitled to recover nominal damages, general damages, special damages, compensatory damages and/or exemplary/punitive damages.

## N. VIOLATION OF 18 USC 245: FEDERALLY PROTECTED ACTIVITIES

98) All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by reference.

99) (1) any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from-

100)    (1)(B) participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States;

101)    To wit; the Federal Government inclusive of but not limited to the duly elected President of the United States and various other Executive, Legislative and JUDICIAL branches of United States Government administer official accounts allowing two way access of the Public with their REPRESENTATIVE GOVERNMENT on the Defendant's "platform" which now has been denied to the Plaintiff in a most vile and punitive manner. Certain accounts which appear on the Defendant's platform are activity receiving Federal financial assistance simply because of the FACT they are administered by the Federal Government.

102)    (1)(E) participating in or enjoying the benefits of any program or activity receiving Federal financial assistance. Plaintiff has been denied access in a most vile and punitive manner.

103)   (2) any person because of his race, color, religion or national origin and because he

is or has been-

(E) traveling in or **using any facility of interstate commerce**, or using any vehicle, **terminal, or facility of any common carrier** by motor, rail, water, or **air**;

(F) **enjoying the goods, services, facilities, privileges, advantages, or accommodations of any** inn, hotel, motel, or other establishment which provides lodging to transient guests, or of any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility which serves the public and which is principally engaged in selling food or beverages for consumption on the premises, or of any gasoline station, or of any motion picture house, theater, concert hall, sports arena, stadium, **or any other place of exhibition or entertainment which serves the public, or of any other establishment which serves the public and** (i) which is located within the premises of any of the aforesaid establishments or within the premises of which is physically located any of the aforesaid establishments, and (ii) which holds itself out as serving patrons of such establishments; or

104)   (3) **during or incident to a riot or civil disorder, any person engaged in a business in commerce or affecting commerce**, including, but not limited to, any person engaged in a business which sells or offers for sale to interstate travelers a substantial portion of the articles, commodities, or services which it sells or where a substantial portion of the articles or commodities which it sells or offers for sale have moved in commerce; or

105)   (4) **any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from-**

106)    (4)(A) participating, without discrimination on account of race, color, religion or

national origin, in any of the benefits or activities described in subparagraphs (1)(A)

through (1)(E) or subparagraphs (2)(A) through (2)(F); or

107)    (4)(B) affording another person or class of persons opportunity or protection to so

participate; or

108)    (5) any citizen because he is or has been, **or in order to intimidate such citizen or**

**any other citizen from lawfully aiding or encouraging other persons to participate,**

**without discrimination on account of race, color, religion or national origin, in any**

**of the benefits or activities described in subparagraphs** (1)(A) through (1)(E) or

subparagraphs (2)(A) through (2)(F), **or participating lawfully in speech** or **peaceful**

**assembly opposing any denial of the opportunity to so participate-**

109)    **shall be fined under this title, or imprisoned not more than one year, or both**;

and if bodily injury results from the acts committed in violation of this section or if such

acts include the use, attempted use, or threatened use of a dangerous weapon,

explosives, or fire shall be fined under this title, or imprisoned not more than ten years,

or both; and if death results from the acts committed in violation of this section or if such

acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt

to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title or

imprisoned for any term of years or for life, or both, or may be sentenced to death. **As**

**used in this section, the term "participating lawfully in speech or peaceful**

**assembly" shall not mean the aiding, abetting, or inciting of other persons to riot**

**or to commit any act of physical violence upon any individual or against any real**

**or personal property in furtherance of a riot**...

110)     Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of a singular tweet with maybe 10 words and an associated picture, of which the Defendant fails to display in their "Hateful Conduct" argument. This action in itself is a "Hate Crime" perpetrated upon the Plaintiff and is blatantly criminal in nature and designed with willful purpose and malice to deprive United States Citizens their Right to Free Speech as stated in the First Amendment to the Constitution of the United States of America. The matters stated in this Complaint and the Evidence supplied by the Defendant through this as to the CAUSE of THEIR ACTION support the fact that a South African National has more freedom of speech in America than a Natural Born American Citizen in his own country. This in any other country would have the Defendant labeled a terrorist organization.

111)     Plaintiff is entitled to recover nominal damages, general damages, special damages, compensatory damages and/or exemplary/punitive damages.

## O. VIOLATION OF JASTA "JUSTICE AGAINST SPONSORS OF TERRORISM ACT" Public Law 114–222 .

112)     All previous allegations, Plaintiff's Exhibits and Affidavit are incorporated herein by reference.

113)     (b) PURPOSE.—The purpose of this Act is to provide civil litigants with the broadest possible basis, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United States.

114)   '(b) RESPONSIBILITY OF FOREIGN STATES.—A foreign state, including but not

limited to; **South Africa**, shall not be immune from the jurisdiction of the courts of the

United States in any case in which money damages are sought against a foreign state

for physical injury to person or property or death occurring in the United States and

caused by—

"(1) an act of international terrorism in the United States;

and

"(2) a tortious act or acts of the foreign state, or of any official, employee, or agent of that

foreign state while acting within the scope of his or her office, employment, or agency,

regardless where the tortious act or acts of the foreign state occurred.

115)   (d) RULE OF CONSTRUCTION.—A foreign state shall not be subject to the

jurisdiction of the courts of the United States under subsection (b) on the basis of an

omission or a tortious act or acts that constitute mere negligence.

116)   SEC. 4. AIDING AND ABETTING LIABILITY FOR CIVIL ACTIONS REGARDING

TERRORIST ACTS.

117)   (2) LIABILITY.—In an action under subsection (a) for an injury arising from an act of

international terrorism committed, planned, or authorized by an organization that had

been designated as a foreign terrorist organization under section 219 of the Immigration

and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international

terrorism was committed, planned, or authorized, liability may be asserted as to any

person who aids and abets, by knowingly providing substantial assistance, or who

conspires with the person who committed such an act of international terrorism.

118)   Plaintiff disputes the propriety of Twitter Inc.'s ("TWITTER") deplatforming by way of

a singular tweet with maybe 10 words and an associated picture, of which the Defendant

**WHEREFORE PREMISES CONSIDERED,** Plaintiff prays the Court issue citation/summons for each Defendant to appear and answer, that the requested discovery by Motion be granted, and that Plaintiff be awarded judgement against the Defendants for the following:

a) Nominal damages; $27,000,000.00 USD

b) General damages; $27,000,000.00 USD

c) Actual & Compensatory damages; $54,000,000.00 USD

d) Special damages; TO BE DETERMINED

e) Exemplary & Punitive damages; $81,000,000.00 USD

f) Pre- and post-judgement interest; TO BE DETERMINED

g) Costs of court; and

h) Such further relief, both general and special, at law or in equity, to which Plaintiff to be justly entitled.

The Plaintiff additionally prays the following individuals or entities be labeled as terrorists or terror organizations by the United States Government and by and through this Complaint,

**Petitions for these designations to be placed upon; Twitter Inc., Jack Dorsey CEO of Twitter, ViacomCBS, The Daily Show and Trevor Noah a South African National.**

Franklyn Jones, pro-se
2715 Inglewood Ave
Baltimore, MD 21234
443 442-7536

Defendant: Twitter maintains no Resident Agent in the state of Maryland according to the Maryland Department of Assessments and Taxation. This has the result in making Process Service exceedingly difficult despite Twitter itself being used as a medium for International Process Service. Twitter's Terms of Service Expressly State (https://twitter.com/en/tos#update) to contact them at their headquarters address at:

JACK DORSEY CEO

TWITTER, INC.

1355 MARKET STREET

SUITE 900

SAN FRANCISCO, CA 94103

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FRANKLYN K. JONES pro-se,

                       **Plaintiff**

vs.                                            Case No. _____

TWITTER, INC

                                          **JURY DEMAND**

                       **Defendant**

---

### CERTIFICATE OF SERVICE

I hereby certify on this __1__ day of July, 2020, a copy of the foregoing **COMPLAINT FOR DAMAGES AND OTHER RELIEF WITH JURY DEMAND, AFFIDAVIT OF FRANKLYN JONES, PLAINTIFFS' MOTION TO ALLOW LIMITED JURISDICTIONAL DISCOVERY, BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO ALLOW LIMITED JURISDICTIONAL DISCOVERY, PLAINTIFF'S EXHIBITS 01, PLAINTIFF'S EXHIBIT 02,** were mailed certified return receipt by way of the United States Postal Service. Defendant: **Twitter Inc.**, is presently being sued for actual and punitive damages while conducting business with the Plaintiff. Plaintiff believes that Service of Process is sufficient upon delivery to the Maryland Registered Agent's record. This record is maintained by the Maryland Department of Assessments and Taxation. **FAILING THIS BASIC REQUIREMENT Twitter Inc. has no record.** Plaintiff furthermore states this copy was served to the Chief Executive Officer at the Corporate Headquarters of the named business of the named Defendant.

**https://about.twitter.com/en_us/company.html** Twitter's Terms of Service Expressly State (https://twitter.com/en/tos#update) to contact them at their headquarters address at:

1

JACK DORSEY CEO
TWITTER, INC.
1355 MARKET STREET
SUITE 900
SAN FRANCISCO, CA 94103

Respectfully Submitted,

Franklyn Jones, pro-se
2715 Inglewood Ave
Baltimore, MD 21234
443 442-7536

2